IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PRENTIS WILSON** | : | **CIVIL ACTION NO.** |
| | : | **SECTION " "** |
| **VERSUS** | : | |
| | : | **DIVISION " "** |
| **EXXON MOBIL** | : | |
| **CORPORATION-CHRF and EXXON** | : | **JUDGE** |
| **MOBIL** | : | |
| | : | **MAGISTRATE JUDGE** |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Prentis Wilson, Plaintiff herein, who respectfully files this Complaint against Defendants, Exxon Mobil Corporation-CHRF and Exxon Mobil, as follows:

### JURISDICTION AND VENUE

1.

Jurisdiction of this Honorable Court is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.  The state law claims arise out of the same core of facts such that supplemental jurisdiction is provided over said matters pursuant to 28 U.S.C. § 1367.

2.

Venue is proper in this Court because the violations of federal and state laws upon which this complaint is based occurred in St. Bernard Parish which is located in the Eastern District of the United States District Courts of Louisiana.

### PARTIES

3.

Plaintiff, Prentis Wilson, (hereinafter "Wilson" or "Plaintiff"), presently resides and is domiciled in St. John the Baptist Parish, Louisiana.

4.

Made Defendants herein are:

A. Exxon Mobil Corporation-CHRF (hereinafter "CHRF" or "Defendant"), a business entity authorized to do and doing business in the State of Louisiana.

B. Exxon Mobil (hereinafter "Exxon" or "Defendant"), a corporation that is, upon information and belief, authorized to do and doing business in the States of Louisiana and Texas.

## FACTUAL BACKGROUND

5.

On December 15, 2009, Wilson, an African-American male, began his employment with Defendants as a Team Leader at Exxon's Chalmette Louisiana Refinery.

6.

While employed for Defendants, Plaintiff Wilson received a job performance evaluation that reflected he satisfied and/or exceeded Defendants' expectations of him as a Team Leader.

7.

Defendants' refineries are regulated by numerous state and federal laws and internal policies and procedures that are in place, in part, to ensure a safe workplace environment.

8.

One of the policies in particular involves the appropriate procedures for shutting down a "reformer unit," also known as a "Debutanizer" because it removes and regulates the amount of butane in the gasoline product.

9.

On a number of occasions, Wilson had notified his supervisors that one reformer unit in particular was malfunctioning in that it was inaccurately measuring the amount of product in the unit. However, Wilson's supervisors ignored the issue and failed to correct the problem with the unit.

10.

On August 19, 2010, an incident occurred involving that reformer unit.

11.

Because the unit was inaccurately measuring the amount of product in the unit, the technicians working on the unit were not aware that the product was past the safe amount to be stored therein.  The product eventually overflowed resulting in a fuel spill of hundreds of gallons of product.  This spill also resulted in the refinery having to perform costly and time-consuming soil remediation.

12.

On the date in question, Plaintiff Wilson's co-worker, Mr. Jeff White, a Caucasian male with the same level of authority then held by Wilson, was actually in charge of the controls in question on that particular unit.  Wilson had in fact left that particular unit to assist a trainee on another unit.

13.

Even though Mr. White was in charge of the controls of the unit that overflowed, Plaintiff Wilson was the individual who was disciplined for the matter.

14.

Wilson was in fact terminated for "violation of safe work procedures" related to this event.

15.

Consequently, on or about October 2, 2010, Wilson forwarded an Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire to the EEOC complaining of discrimination based on race.  On August 1, 2011, Wilson returned to the EEOC a signed "Charge of Discrimination."  As a result, on or about April 26, 2012, the EEOC issued a "Notice of Right to Sue" letter related to claims arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq.  Wilson, therefore, has met all administrative prerequisites for the bringing of this action.

## DISCRIMINATION CLAIMS

16.

Defendants actions constitute violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*., 42 U.S.C. § 1981, and other applicable laws and statutory provisions.

17.

Defendants, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*., have engaged in unlawful employment practices consisting of, but not limited to, intentional discriminatory treatment by terminating Plaintiff Wilson when another, Caucasian employee was actually responsible for the incident in question. Additionally, Defendants' actions may constitute unlawful retaliation under 42 U.S.C. § 200e-3(a), and other applicable laws.

## BAD FAITH BREACH OF CONTRACTUAL OBLIGATION CLAIMS

18.

Article 1756 of the Louisiana Civil Code defines an "obligation" as a "legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee.  Performance may consist of giving, doing, or not doing something."

19.

Article 1906 of the Louisiana Civil Code also defines a contract as an agreement by two or more parties whereby obligations are created, modified, or extinguished.

20.

Article 1757 of the Louisiana Civil Code sets forth that obligations may arise from contracts and other declarations of will.

21.

Article 1758 of the Louisiana Civil Code explains that "An obligation may give the obligee the right to: (1) Enforce the performance that the obligor is bound to render; (2) Enforce performance by causing it to be rendered by another at the obligor's expense; (3) Recover damages for the obligor's failure to perform, or his defective or delayed performance.

22.

Article 1983 of the Louisiana Civil Code imposes an implied duty upon the parties to a contract to perform their contractual duties in good faith.

23.

Article 1994 of the Louisiana Civil Code holds a party to a contract liable for the damages caused by his failure to perform through nonperformance or defective performance.

24.

Article 1997 of the Louisiana Civil Code states that an obligor in bad faith is liable for all the damages, foreseeable or not, that are direct consequence of his failure to perform.

25.

Article 1998 allows damages for nonpecuniary loss to be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.

26.

Pursuant to Defendants' employee handbook, and most specifically the policies regarding safe operation of the reformer units, Defendants, as obligors, were bound to render a performance in favor Plaintiff, the obligee, to provide a safe workplace.

27.

Pursuant to Defendants' employee handbook, and most specifically the policies regarding safe operation of the reformer units, Defendants, as obligors, were bound to render a performance in favor Plaintiff, the obligee, to provide a workplace where the safety rules are applied evenly without regard to an employee's racial or ethnic background.

28.

These obligations arose from Defendants' "declarations of will" in said employee handbook policies.

29.

To instead punish only African-American employees for alleged violations of safety rules while permitting violations by Caucasian employees to go unpunished was a gross violation of the obligations created between Plaintiff and Defendants.

30.

The aforementioned obligations gave Plaintiff, as obligee, the right to: (1) Enforce the performance that Defendants, the obligors, were bound to render and (2) Recover damages for the obligors' failure to perform.

31.

This failure by Defendants to honor the aforementioned contractual obligation was a failure to perform their contractual duties in good faith.

32.

Further, Defendants' failure to perform was done in bad faith making them liable for all the damages, foreseeable or not, that are consequence of their failures to perform.

**DAMAGES**

33.

At all relevant times, Defendants were liable for the conduct described herein, as carried out by their managers, employees and/or agents under the doctrine of Respondeat Superior.

34.

All of the actions complained of herein were made with malice and/or reckless indifference to Wilson's state and federally protected rights.

35.

Defendants' bad faith breach of their contractual obligations also render them liable for damages for the nonpecuniary losses suffered by Plaintiff, because the nature of the contract in question was intended to gratify Plaintiff's nonpecuniary interests and, because of the circumstances surrounding the formation and the nonperformance of the contract, Defendants knew, or should have known, that their failures to perform would cause those kinds of losses.

36.

Regardless of the nature of his contractual agreement with Defendants, Plaintiff is also entitled to extraordinary, nonpecuniary damages because Defendants intended, through its agents' egregious conduct toward Plaintiff, to aggrieve Plaintiff's feelings.

37.

Plaintiff suffered real, substantial emotional distress due the circumstances of the events leading up to and including his termination.  Because of the circumstances surrounding the formation of these parties' obligations, and Defendants' misfeasance in the performance of its obligations related thereto, Defendants knew, or should have known, that their failure to perform would cause the kind of grief, mental anguish and loss of intellectual and professional enjoyment suffered by Plaintiff.  Defendants' liability for their bad faith breach of the contractual obligations owed to Plaintiff is therefore further enhanced creating liability for all damages resulting from the breach.

38.

As a result of the unlawful actions described above, Defendants are liable to Wilson for damages, including back pay and front pay; lost benefits; mental anguish; humiliation and embarrassment; loss of reputation; loss of enjoyment of life; foreseeable and unforeseeable damages, compensatory damages; punitive damages; prejudgment interest; attorney's fees and all costs of these proceedings.

39.

Plaintiff demands trial by jury on all issues so triable herein.

WHEREFORE, Plaintiff, Wilson, prays that Defendants be duly cited and required to appear and answer Plaintiff's Complaint and Jury Demand and, after due proceedings had and legal delays, there be judgment rendered herein in favor of Plaintiff and against Defendants as detailed in the foregoing Complaint and Jury Demand, in an amount reasonable in the premises, together with legal interest from the date of judicial demand, all costs of these proceedings, attorneys' fees and for any and all general and equitable relief deemed appropriate by this Honorable Court under the circumstances.

Respectfully submitted,

s/ G. Karl Bernard
G. Karl Bernard (#24294) T.A.
G. KARL BERNARD & ASSOCIATES, LLC
1615 Poydras Street, Suite 220
New Orleans, Louisiana  70112
Telephone:     (504) 412-9953
Facsimile:      (504) 412-8088
karlbernardlaw@bellsouth.net

Attorney for Plaintiff, Prentis Wilson
