UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PRENTIS WILSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1935** |
| **EXXON MOBIL CORPORATION-CHRF, ET AL.** | **SECTION "A" (3)** |

**ORDER**

On January 9, 2013, Exxon Mobil Corporation's Motion for Partial Dismissal under Rules 12(b)(1) and 12(b)(6) [Doc. #7] came on for oral hearing before the undersigned.[1] Present were Karl Bernard on behalf of plaintiff and Melanie Hartmann on behalf of defendant. After the oral hearing, the Court took the motion under advisement. Having reviewed the motion, the opposition, the case law and the parties' oral arguments, the Court rules as follows.

**I.     Background**

The complaint alleges as follows. On December 15, 2009, Prentis Wilson, an African-American male, began his employment with defendant Exxon Mobil Corporation ("Exxon") as a Team Leader at Exxon's Chalmette, Louisiana Refinery. While employed, plaintiff satisfied and/or exceeded Exxon's expectations.

Like all segments of America's petroleum and chemical industry, Exxon's refineries are

---

[1] This lawsuit is before the Court by the consent of the parties under 28 U.S.C. § 636(c). [Doc. #21].

regulated by numerous state and federal laws and internal policies and procedures that are in place, in part, to ensure a safe workplace environment. One of the policies in particular involves the appropriate procedure to shut down a "reformer unit," also known as a "Debutanizer." A Debutanizer removes and regulates the amount of butane in gasoline. On a number of occasions, Wilson notified his supervisors that one of Exxon's reformer units was malfunctioning – that it was inaccurately measuring the amount of product in the unit. Notwithstanding the repeated warnings, Wilson's supervisors ignored the issue and failed to correct the problem.

On August 19, 2010, an incident occurred involving the reformer unit about which Wilson had complained. Because the unit was inaccurately measuring the amount of product therein, the technicians in charge were not aware that the product level was past the safe storage amount. The product eventually overflowed, resulting in a fuel spill of hundreds of gallons of product. This spill required Exxon to perform costly and time-consuming soil remediation.

On the date in question, Wilson's co-worker, Jeff White, a Caucasian male with the same level of authority then held by Wilson, was actually in charge of the controls on the reformer unit in question. Even though White was in charge of the unit that overflowed, Exxon disciplined Wilson for the spill. Exxon terminated Wilson for a "violation of safe work procedures" related to this event.

Consequently, on October 2, 2010, Wilson forwarded an Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire to the EEOC in which he complained of discrimination based on race. On August 1, 2011, Wilson returned to the EEOC a signed "Charge of Discrimination." As a result, on April 26, 2012, the EEOC issued a "Notice of Right to Sue" letter related to claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. 2000e, *et seq.*

On July 25, 2012, Wilson filed this lawsuit in this Court against Exxon in which he alleges (1) race discrimination under Title VII and 42 U.S.C. § 1981 and (2) state-law claims of bad-faith breach of contractual obligations. Exxon now seeks to dismiss all claims except for those for race discrimination under Title VII and Section 1981.

**II.     Analysis**

    **A.     Motion to Dismiss: Rule 12(b)(1)**

        **1.     Legal Standard**

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any other attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

A Rule 12(b)(1) motion to dismiss challenges the subject matter jurisdiction of a federal district court. A claim is properly dismissed for lack of subject matter jurisdiction when the Court lacks the statutory or constitutional power to adjudicate the claim. *See Home Builders Assoc., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A Rule 12(b)(1) motion may be appropriate when a plaintiff's claim is barred by sovereign immunity, as well as in the typical situation where a defendant alleges that there is no diversity of citizenship between the parties, jurisdictional amount, and/or the plaintiff's claim does not involve a federal question. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1350 (2d ed. 2003).

Because federal courts are courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims. *See, e.g., Stockman v. Fed. Election Comm'n*, 138

F.3d 144, 151 (5th Cir. 1998). Thus, a federal court must dismiss an action whenever it appears that it lacks subject matter jurisdiction. *Id.* at 151.

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir. 2001). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record. *See Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). Uncontroverted allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

**2.     Analysis**

Here, Exxon argues that the Court lacks jurisdiction to adjudicate Wilson's Title VII-retaliation claim because he failed to include it in his charge of discrimination before the EEOC. Exxon notes that Wilson failed to check the box next to "Retaliation" on his original intake questionnaire. One year later, Wilson completed his charge of discrimination and again failed to check the box next to retaliation. Exxon also notes that in the narrative section in which he detailed the facts underlying his claim, Wilson failed to mention any allegation of retaliation or any protected activity in which he engaged before his termination.

Wilson simply contends that he has not yet asserted a claim for retaliation under Title VII. Citing his complaint, he notes that he alleged only that Exxon's actions *may* constitute unlawful retaliation because discovery has not been completed, and counsel is unaware of whether any unlawful retaliation may have occurred.

It is well-settled law that employment-discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996). Although the filing of an EEOC charge is not a jurisdictional prerequisite, it "is a precondition to filing suit in district court." Dao, 96 F.3d at 789.

The Court finds that while Exxon's argument potentially has merit, it is premature at this stage of the litigation. Wilson has alleged no claim of retaliation in his complaint; he has alleged only that a possible claim of retaliation may arise in the future once discovery has begun and progressed. Asking the Court to dismiss Wilson's retaliation claim when none has been asserted is asking the Court to render an advisory opinion on the possible existence of such a claim. This, the Court can not do. The Court finds, however, that plaintiff will face substantial hurdles should he later seek to add a claim for retaliation. That plaintiff twice failed to check the "Retaliation" box on the intake questionnaire and the charge of discrimination and that he failed to detail a claim for retaliation in the narrative section strongly supports the argument that plaintiff failed to exhaust his administrative remedies with regard to such a claim. But dismissing such a claim at this stage of the litigation, having not been pleaded, is premature. Exxon may re-urge the motion if and/or when Wilson seeks to amend his complaint to add a claim for retaliation.

**B.     Motion to Dismiss: Rule 12(b)(6)**

**1.     Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). To survive a Rule 12(b) motion to dismiss, a

5

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (recognizing the *Bell* standard of review). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (quotation marks, citations, and footnote omitted). Plausible grounds "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

To resolve a Rule 12(b)(6) motion, the Court is generally limited to considering only those allegations appearing on the face of the complaint. However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3rd Cir. 1990). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

**2.     Analysis**

Exxon first asks the Court to dismiss any claim for unlawful retaliation because, *inter alia*, Wilson fails to allege that he engaged in any protected conduct. As noted above, however, any request to dismiss a claim for retaliation is premature at this stage of the litigation.

Exxon also asks the Court to dismiss any race discrimination claim based on any employment action other than Wilson's termination. Noting that Wilson's complaint alleges that Exxon "engaged in unlawful employment practices consisting of, *but not limited to*, intentional discriminatory treatment by Plaintiff Wilson when another, Caucasian employee was actually responsible for the incident in question," [Doc. #1 at p. 4] (emphasis added), Exxon argues that Wilson has failed to allege that he suffered any other adverse employment action. Exxon further asks the Court to dismiss any claim for race discrimination other than those under Title VII and Section 1981. Because Wilson admits that he alleges no other adverse employment action and no other claim for race discrimination under any other law other than Title VII and Section 1981 [Doc. #17 at p. 8], these arguments are moot.

Wilson alleges that Exxon punished only African-American as opposed to Caucasian employees for violations of safety rules in violation of their policies in Exxon's alleged employee handbook. This is the sole ground in *the complaint* for Wilson's claim for bad faith breach of contractual obligation. Exxon asks the Court to dismiss Wilson's claim for bad faith breach of contractual obligation because no employee handbook – and thus no contract – exists between it and Wilson. Exxon maintains that even were an employee handbook to exist, Wilson's claim for bad faith breach of contractual obligation is no more than a restatement of his race discrimination claim. Exxon contends that Wilson can not circumvent federal anti-discrimination laws by asserting a state-law claim to reap additional damages.

Wilson argues that Exxon consistently exhibited bias with regard to disciplinary actions against African-Americans and Caucasians. Wilson maintains that Exxon promised to adhere to its own as well as OSHA's safety procedures. Citing Louisiana Revised Statute § 23:13, Wilson notes

that Exxon is required to provide a safe working environment to its employees. Wilson contends that under Louisiana law, he was entitled to rely on Exxon's promise to do so. Wilson maintains that Exxon promised that all employees would be required to follow all safety rules and regulations and that Exxon would punish any violations evenhandedly. Wilson asks the Court to deny Exxon's motion here as premature.

To establish a breach-of-contract claim under Louisiana law, Wilson must allege and prove the existence of a contract. *Quality Flooring v. B.F. Constr. Co., Inc.*, 56 So. 3d 395, 399 (La. Ct. App. 2011). Here, the only allegation *in the complaint* of a contract is the alleged employee handbook (the existence of which Exxon denies). Louisiana federal and state courts have consistently held that employee handbooks do not have all four of the elements required for the creation of a contract. *Gilbert v. Tulane Univ.*, 909 F.2d 124 (5th Cir. 1990); *Keller v. Sisters of Charity of Incarnate Word*, 597 So.2d 1113 (La. Ct. App. 1992) *Wall v. Tulane Univ.*, 499 So.2d 375 (La. Ct. App. 1986). Accordingly, Wilson has failed to allege the existence of a contract between him and Exxon and thus, this claim fails. The Court dismisses this claim.[2]

### III.     Conclusion

For the reasons outlined above,

**IT IS ORDERED** that Defendant's Motion for Partial Dismissal Under Rules 12(b)(1) and 12(b)(6) [Doc. #7] is GRANTED IN PART and DENIED IN PART.

New Orleans, Louisiana, this 13th day of February, 2013.

---

[2] While Wilson raised other arguments and law in his opposition memorandum, the Court notes that the only basis for a contract *in the complaint* is the alleged employee handbook.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**